IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOEL BAUTISTA, | : | |
|     Plaintiff | : | No. 1:21-cv-00126 |
| | : | |
|     v. | : | (Judge Kane) |
| | : | |
| JOHN WETZEL, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

On January 21, 2021, pro se Plaintiff Noel Bautista ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants John Wetzel ("Wetzel"), Bernadette Mason ("Mason"), and Jessica Carey ("Carey"). (Doc. No. 1.) Presently before the Court is Defendants' motion to dismiss (Doc. No. 12) Plaintiff's complaint. Plaintiff filed his brief in opposition to the motion to dismiss on April 2, 2021. (Doc. No. 14.) Defendants filed their reply brief on April 15, 2021. (Doc. No. 15.) For the following reasons, the Court will grant Defendants' motion to dismiss.

**I.     BACKGROUND**

In his complaint, Plaintiff avers that on October 7, 2019, he was taking a shower in his housing unit when he was "struck and seriously hurt by an inadequately assembled light fixture that was deemed tampered with" and not maintained by the Department of Corrections ("DOC"). (Doc. No. 1 at 6.) Plaintiff maintains that he experienced "instant head pain, dizziness, [and] neck [and] shoulder pain." (Id.) Plaintiff "stumble[d] out of the shower in fear of being electrified" and immediately "[saw] stars." (Id.) He maintains that because of this incident, he suffers from "[unbearable migraines]" and that his eyes are now sensitive to bright light. (Id. at 8.) He also alleges that he suffered a "neck and shoulder injury which was also downplayed by

the medical department." (Id.)  Plaintiff indicates that the medical department "has been treating [his] serious injuries with monthly prescriptions of Excedrin, a migraine medication." (Id.)  He states that "an eye doctor visit resulted in the out of pocket purchase of new glasses with tint to help with the sensitivity to the exposure to [constant] and different lights." (Id.)  Plaintiff claims that he has to rehabilitate his neck and shoulder injury on his own "with constant stretching and out of pocket purchase of pain medication with [sporadic] light workouts." (Id.)  Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights.[1]  (Id. at 3.)  He seeks declaratory and injunctive relief, as well as damages.  (Id. at 9.)

---

[1] Plaintiff also vaguely suggests that Defendants violated his equal protection rights under the Fourteenth Amendment.  (Doc. No. 1 at 4.)  The Equal Protection Clause requires state actors to treat all persons who are "similarly situated" equally.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals."  See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).  However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007).  When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice.  See Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005) (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)).

In the instant case, Plaintiff does not state that he is a member of a protected class.  Indeed, prisoners are not a protected class of individuals.  See Abdul-Akbar v. MeKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (concluding that prisoners are not a subject class).  Moreover, nothing in the record suggests that Defendant Fisher intentionally treated Plaintiff differently from other inmates or treated other inmates more favorably in any respect.  Plaintiff's allegations that his equal protection rights were violated are simply "bald assertions" that fail to allege "occasions and circumstances" of different treatment.  See Young, 160 F. App'x at 266.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.  Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### III. DISCUSSION

#### A. Plaintiff's Complaint

Defendants assert that the Court should dismiss Plaintiff's complaint because: (1) Defendants lack personal involvement in the alleged violations of Plaintiff's rights; and (2) Plaintiff has failed to state a plausible Eighth Amendment claim.  (Doc. No. 13 at 2.)  The Court considers each argument below.

##### 1. Personal Involvement

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violates his rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Solan v. Ranck, 326 F. App'x 97, 100 (3d Cir. 2009).  In his complaint, Plaintiff suggests that Defendant Carey is "in charge of the upkeep and decisions made on the unit leaving her responsible to make [sure] all that is out of order is fixed."  (Doc. No. 1 at 4.)  He suggests that he has knowledge that Defendant Carey "has been trying to get those showers [maintained] and up to date for months before this incident even occurred proving knowledge of the dilapidation, [unsanitary], and

5

hazardous conditions that resulted in the deliberate indifference." (Id.)  Based upon Plaintiff's allegations, the Court concludes that Plaintiff has sufficiently alleged that Defendant Carey was personally involved in the alleged violation of his Eighth Amendment rights.

It appears that Plaintiff seeks to proceed against Defendants Wetzel and Mason based upon their respective supervisory positions as Secretary of the DOC and Superintendent of SCI Mahanoy.  Plaintiff avers that Defendant Wetzel "oversees and is in control of all functions at all state correctional institution[s] in PA at all times" and that it is his duty to ensure that "hazardous, dangerous, and neglected conditions" are fixed.  (Id.)  Plaintiff maintains further that Defendant Mason is "in charge and legally responsible for the operations of SCI Mahanoy and the welfare of all inmates residing in this prison." (Id.)

Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676.  The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of

Carbondale, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's complaint fails to set forth plausible supervisory liability claims against Defendants Wetzel and Mason. The complaint is devoid of allegations that Defendants Wetzel and Mason had knowledge of and acquiesced in any alleged constitutional violations by their subordinates. See A.M., 372 F.3d at 586. Moreover, Plaintiff fails to identify a policy that allegedly caused the violation of his constitutional rights. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). In response, Plaintiff avers that Defendants were aware of the faulty light fixture because of another civil lawsuit filed by inmate Taji Lee. (Doc. No. 14 at 4.) Presumably, Plaintiff is referring to the civil suit filed by inmate Lee in which he alleges that he was denied medical care after being struck by a falling light fixture, while showering at SCI Mahanoy, in 2014. See Lee v. Corizon Health, Inc., No. 1:16-cv-2154, 2020 WL 4005638, at *1-2 (M.D. Pa. Jan. 14, 2020), report and recommendation adopted, 2020 WL 4003603 (M.D. Pa. July 15, 2020). However, inmate Lee did not name Wetzel and Mason as defendants in that matter, and Plaintiff has alleged no facts suggesting that they were personally aware of (1) inmate Lee's incident and (2) the existence of any faulty light fixtures five (5) years after inmate Lee's incident. Thus, Plaintiff has failed to set forth plausible supervisory liability claims against Defendants Wetzel and Mason, and his claims against them are subject to dismissal for that reason alone.

### 2. Eighth Amendment Claims

#### a. Conditions of Confinement

In order to state an Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1) he was incarcerated under conditions imposing a substantial risk

of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant official's deliberate indifference caused him harm." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015). Officials demonstrate deliberate indifference when they know of and disregard an excessive risk to health or safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Conditions of confinement violate the Eighth Amendment if they, "alone or in combination . . . deprive inmates of the minimal civilized measure of life's necessities." See id. at 347. Such necessities include "adequate food, clothing, shelter, and medical care." See Farmer, 511 U.S. at 832.

In the instant case, Plaintiff fails to adequately allege facts suggesting that Defendants were deliberately indifferent to any risk posed by the faulty light fixture in the shower. As discussed supra, nothing in the complaint suggests that Defendants Wetzel and Mason were personally aware of any risk posed by the fixture. As to Defendant Carey, Plaintiff alleges that she has been trying to get the showers maintained for months. (Doc. No. 1 at 4.) Such an allegation, however, suggests the opposite of deliberate indifference. Rather than suggesting that Defendant Carey ignored any risk to inmate health and safety, Plaintiff appears to suggest that she was working to ameliorate such risk. Plaintiff's complaint, as pled, simply does not set forth a plausible Eighth Amendment claim regarding the conditions of confinement at this time. See, e.g., Holloway v. Genovese, No. 1:19-cv-65, 2019 WL 5897939, at *4 (M.D. Tenn. Nov. 12, 2019) (concluding that the inmate-plaintiff failed to state an Eighth Amendment conditions of confinement claim because, at most, his allegations concerning a faulty light fixture that fell on his head reflected negligence and not deliberate indifference); Peeks v. Beard, No. 3:05-cv-1764, 2005 WL 30088369, at *1-2 (M.D. Pa. Nov. 17, 2005) (dismissing the inmate-plaintiff's Eighth Amendment claim based upon a faulty light fixture that fell on his head).

### b.  Adequate Medical Care

Defendants have construed Plaintiff's complaint as raising an Eighth Amendment claim concerning the denial of medical care against Defendants.  (Doc. No. 13 at 10-12.)  To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.  See Farmer, 511 U.S. at 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  See Farmer, 511 U.S. at 837.  Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842).

The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  See Spruill, 372 F.3d at 236.  Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison

official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." See id.  In the instant case, Plaintiff explicitly alleges that he received medical treatment but appears to suggest that such treatment was inadequate because he has not received a CT scan.  (Doc. No. 1 at 8.)  Nothing in the complaint, however, suggests that Defendants believed or had actual knowledge that the medical department at SCI Mahanoy was mistreating or not treating Plaintiff.  Thus, any Eighth Amendment claims against Defendants premised upon the provision of inadequate medical care are subject to dismissal.

### B. Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Plaintiff to file an amended complaint against Defendants that corrects the deficiencies identified herein.  Plaintiff is advised that the amended complaint must be complete in all

respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss. (Doc. No. 12.) The Court, however, will grant Plaintiff leave to file an amended complaint. An appropriate Order follows.